Thank you, Your Honor. May it please the Court, I am Tim Tobin and I'm here on behalf of Wenner Quality Services, who I'll refer to from time to time as WQS. We're here today because the District Court made findings of fact in responding to a motion for summary judgment, a motion which it denied. It ignored overwhelming and undisputed evidence that the owners of the businesses involved in this matter made a legitimate and proper business decision to separate one aspect of the business from the rest, and that at great expense they documented that separation and they took great pains to operate those businesses separately. These are all facts that the underlying Plaintiff Twin City Pipe Trades Association has admitted. There isn't any aspect of what I have just said that they denied. And it was based on these improper findings of fact that the District Court held that WQS was controlled by the former entity, either Mankato Plumbing and Heating, MPH, or S&S Thermodynamics, to the extent that it had an existence in form only, which is the standard that must be applied in order to establish alter ego liability. And that this was done as a subterfuge, fancy word for deceit, in order to perpetuate a wrong or to commit a fraud. These are, if nothing else, intensely factual findings. And the District Court compounded this error through the improper application of collateral estoppel in a subsequent lawsuit, the one that brings us here today, where it based, where it granted judgment without having a judgment in the first lawsuit. The main issues with regard to this matter are whether the uncontroverted facts, the uncontested facts, show, number one, that level of control, and control has to do with the operation of the business. It does not have to do with the establishment of the business. Control such that WQS existed in form only. The District Court, in order to have reached the decision that it did, must have concluded that there were no contested issues of fact that suggest otherwise. But before us, isn't it the collateral estoppel ruling that is on appeal now? Well, it's two things that are on appeal, Your Honor. Number one, it is that we got here through the application of collateral estoppel. But we also made a motion for summary judgment which was denied, and that is in front of you. It is a de novo review, whether it's collateral estoppel or whether it's summary judgment. You have the ability to look at these facts and the ability to decide that, number one, the District Court was wrong in its conclusion, that indeed there are issues of fact, or that collateral estoppel was misapplied. But more importantly, that in fact, my client, WQS, should have prevailed on its motion for dealing with the issue of collateral . . . We don't have jurisdiction over an appeal from an order denying summary judgment. You know that. Once there's been a final judgment? Well . . . There's a final judgment in this case. You want us to say there was error on collateral estoppel, then order the District Court to enter judgment in your client's favor because you were entitled to summary judgment. I believe that this court does have the ability to direct the District Court to order judgment in our favor, yes, on our motion for summary judgment which was improperly denied. But because, Your Honor, it was a final decision . . . Well, I understand there was a final decision. We have jurisdiction over the appeal challenging the order dismissing the claim based on collateral estoppel. If, for example, my client's motion for summary judgment had been denied, we proceeded to trial and I came before this court as a non-prevailing party in that situation, and I could argue that the summary judgment denial was an error at that point in time, and I don't think this is any different. But let's spend our time on the collateral estoppel. Well, if it went to trial, you'd be asking for a motion for judgment as a matter of law. That's what would be before us, denial of a motion for judgment as a matter of law. I think . . . You don't think so? I don't think so, but I don't think that that prevents this court from granting judgment or ordering the granting of judgment in my client's favor. But I'll let this court sort it out because we're also here to seek reversal of the court's judgment against my client, and we do so on multiple grounds. The first is the improper application of collateral estoppel, and we have to remember how this case got where it got. There was an earlier lawsuit, as the court is undoubtedly aware, that resulted in the denial of my client's first . . . my other client's first motion for summary judgment. That denial, in the order the judge made certain conclusory statements, and ultimately made a decision without granting judgment in favor of the pipe trades in that case, that there were no factual issues to try with regard to liability. Because of the status of the case, no judgment was ever entered on that conclusion, and then the clients that I was representing in that matter filed bankruptcy, which mooted it, and of course, prior to the entry of a judgment, it was non-appealable. So there was no way that we were able to seek any kind of relief or recovery as a result of that decision. Do you think that that alone is dispositive? It seems we look at it a little bit more broadly than just simply whether you were able to appeal it. It's dispositive in that there was no judgment entered that could form the basis for the application of collateral estoppel. What case says that's an essential prerequisite? I thought our cases, Nangle and John Morrell, said that's not an absolute prerequisite. I will agree with you that it is not an absolute prerequisite, and that in certain cases it can be overlooked, but it is one of the four factors that the court looks at in terms of whether to apply collateral estoppel. Is it a factor that S&S voluntarily chose to go into bankruptcy? It was a voluntary decision in that they needed to seek the protection of the bankruptcy. Well, they had an option to do that versus proceeding with the litigation, didn't they? I'm not sure that they had, as a practical matter, that they had that option, no. I don't think they did. I think they would have been done one way or the other, whether they sought protection of the bankruptcy court or not, and I don't think they should be penalized for seeking their constitutional protection under the bankruptcy law, but more importantly, I don't think WQS, who was not a part of that situation and was not a party in that case, should now be straddled with a decision that was unappealable because of the fact that one of the parties filed bankruptcy. So really, then, you're focusing more on the privity for WQS? Well, and not only the privity, yes, but the fact that this decision, this original decision by the judge, is unchallengeable. Because it was not appealed . . . I mean, there was no judgment, and yes, it's a technicality, Judge Colleton, and it's one that you can overlook, but in this particular case, I think it's critically important because there has to be a fundamental fairness in the application of collateral estoppel. That is the Crest-Hankers case and a number of other precedents from this court. Do you think the district court made an independent privity determination independent of the findings from what is now being collaterally estopped? I don't see that it's in the record, so I don't know what the district court did. But what if the court had done that, just done an independent privity analysis? If the court had done an independent privity analysis, well, then I could challenge that, I would think, and since it is the identical substantive issue that led to the entry of judgment, it seems to me I should be able to argue the facts of that matter, which I would like to get to because I think they're critical in this case. I think there is, at a minimum, at a minimum, there is an issue as to the idea of control and fraud. What the district court did is on a motion for summary judgment that was made seeking dismissal of the claims, it held that my clients in that first litigation not only exercised this level of control, which was completely belied by the undisputed facts, but also committed fraud. These people never had an opportunity to testify in response to that, number one, and number two, the district court made that conclusion without hearing from the witnesses themselves, but from basing it on documents. It was the most blatant overexercise of decision making by the district court on a motion for summary judgment that it then denied. So we are here because a motion for summary judgment was denied, then that never turns into a judgment, then we come around for the second round, I make a motion for summary judgment on behalf of WQS, and the other side makes a motion seeking application of collateral estoppel. We've never had this issue addressed, whether it was proper for the district court to grant summary judgment, which it didn't even do, but to grant summary judgment against my client on an intensely factual issue, which implies, requires a finding of fraud. So my client has been found guilty of fraud because its motion for summary judgment was denied. Now there's some aspect of fundamental fairness that is violated in that process. That's number one. And this court in Cresthanker made it absolutely clear. Would you say that WQS is in privity with Wenner? Pardon me? On the question of privity, would you say that WQS is in privity with Wenner, the owner of the closely held corporation? Well, there are two Wenners. With the Wenners, I should have said, maybe then? Well, I'm just trying to understand. Yes. I mean, in privity in the sense that they have similar interests, yes. And were the Wenners parties to the first case? One of them was. So why isn't that a sufficient basis to apply collateral estoppel against WQS if the one party to the first case? I will go back to the standards for application of collateral estoppel, Your Honor. And there is a requirement that there be a judgment. And that . . . Okay. I understand your points on judgment and inability to appeal. But the last part of your argument had to do with privity. So I'm just addressing the privity question only. Well, wouldn't the relationship between Wenner and WQS satisfy the privity component of collateral estoppel? No, because the application of offensive collateral estoppel requires this court, any court, to conduct a fundamental fairness evaluation. And that's what Kress Tanker says. And the fundamental fairness aspect of applying collateral estoppel in a situation where there was a denial of a motion for summary judgment that did not result in judgment, rendering it unappealable, and making that a final decision that then is the fait accompli by which my when there are ample facts in the record that show to the contrary. The facts in this case, frankly, justify granting summary judgment in favor of my client. And we have not had the opportunity to make that argument to this court, nor have we had an opportunity to make that argument to a finder of fact. We have simply lost a motion for summary judgment in the first lawsuit. And now by the operation of collateral estoppel, offensive collateral estoppel, we're denied again. And then there is something terribly wrong about that, which goes back to the requirement of a judgment. And a judgment is a technicality that can be overlooked, but it is one of the requirements. And when you consider the fundamental fairness aspect of the use of collateral estoppel, I think that that factor of not having a judgment, not having the ability to test the accuracy of that original finding, is an absolute death knell to the use of collateral estoppel. It appears I've used my time up. Thank you. Thank you, Mr. Tobin. Mr. Cumming? Thank you, Your Honor. May it please the court, counsel, my name is William Cumming and I represent the plaintiff below Twin City Pipe Trades. The record below in the, actually the record in the first case had the issue of whether Judge Magnuson could issue a summary judgment in favor of my client was raised and the court clarified in a subsequent order to its order on summary judgment that it specifically intended that its decision be a judgment in favor of the plaintiff. And the rule requires that in the absence of material facts, the court can enter judgment as a matter of law. And it's not limited to just from the moving party, but that if it is manifestly apparent from the material that the court has, that either party is entitled to judgment as a matter of law, the court can in fact enter that judgment and it did. But in addition to that, just because the bankruptcy question came up, it is certainly any individual or entity's constitutional right to file for bankruptcy. I do appreciate that. It should be worth noting, however, that it was essentially the day before the final hearing in the first case, the Twin City Pipe Trades versus S&S, that the other clients of counsel filed that bankruptcy notice. It was a timing issue. The notion here seems to be that there's an inability to be able to apply offensive collateral estoppel unless you hear testimony. That seems to be the argument. But that's not. Well, that may not be the greatest argument, but what about the concern that there was no opportunity to appeal and no final judgment? You know, I know our cases say they're not essential, but I'm not sure that's, well, what do you say about that? I mean, there are cases from other circuits of the Supreme Court talking about how the right to appeal may be an important factor in collateral estoppel analysis. Although this court has said, and I think you've noted both of the cases that I think we have referenced in our brief, that a final judgment is not necessarily essential for the application of collateral estoppel. All right. Well, how do we factor that in, though? How do we factor in the absence of a final judgment, the absence of an opportunity to appeal? Assuming they're not essential, what weight do we give that in the analysis? Well, I think part of that goes to the question, Your Honor, about what's new. There was full litigation of this claim against Winter Quality Services, and the plaintiff below went to the trouble of doing document requests, looking for other material, deposing Sarah Winter, going through that entire process to determine if there's another stone that needed to be unturned, because the background in the first case included that counsel had and hadn't factored in. And so in that second case against Winter Quality Services, the plaintiff went to the extent to make sure there was nothing else there. But even in addition to that, it is incumbent upon the defendant in a motion by the plaintiff for summary judgment to bring forward, if there are critical facts that the court needs to consider, what those facts are. And other than the assertion of we didn't intend to engage in what would be an improper purpose in this reorganization, other than saying that there was nothing else, or that they had the advice of counsel when they did it, there was nothing that they brought forward with specificity to allow the trial court to be able to look at what that was. And it's disingenuous today to say that it's those facts that haven't been fully reviewed and explored that should be given weight in overturning the decision below. The very same facts existed at the point of summary judgment in the Winter Quality Services case as were present in the first case. Well, I know. It's just that their point is they think Judge Magnuson got it wrong, and there was never a chance to take that issue to the Eighth Circuit, whether it was fully developed in the first case or not. And I'm trying to get a handle on whether there's some ground in between appeal is a prerequisite to collateral estoppel and it's not required, or whether we're just going to say in the Eighth Circuit it's irrelevant whether you had a right to appeal. Well, Your Honor, I think that there are . . . I appreciate that. Your Honor, I think that whether a party lets the time to appeal lapse or a party takes a different strategic strategy, as is what occurred here by filing bankruptcy, that there was an opportunity, and I think the court made that point, at least in part, with counsel during . . . that they could have put off the bankruptcy filing in order to litigate the issue further? Absolutely, Your Honor. It's not . . . unfortunately, not in this record, but the court certainly may take notice that in the bankruptcy filing that was made, S&S had more than $100,000 of assets on hand in the bank account when it filed bankruptcy. It was . . . this is . . . the notion that there was going to be immediate financial dire consequence if they didn't file bankruptcy on that day is, in our view, is just disingenuous because there were assets that were present. This came right before the damages hearing. It effectively drove a stake through the ability of the court to do that final judgment and perhaps that's clever lawyering. Perhaps it was just the strategic theory at the time. Can't know what was in the party's mind, but I think that the notion that we had some sense that we could point to that there was an immediate need to obtain that bankruptcy stay by filing is . . . it just doesn't make sense. If again, because again, the defendants below in the first case knew that this case against Winter Quality Services was pending. Okay, that's helpful, I appreciate that. I had one other question having to do with this Kress Tankers case. You're familiar with the Kress Tankers case? I wasn't sure your brief addressed it in a very fulsome way, shall we say, so I thought I'd inquire now. You recall the point of the case, one of the points of the case was that the issue in the first case there was whether the parties were alter egos and our court was concerned that there was circularity, as the court put it, in granting collateral estoppel when they thought the issue of privity was the equivalent of collateral estoppel. Do you have any basis to distinguish that case? Well, it's distinguishable, your honor, I think on a couple of points. The first is that the determinations that are attempting to be applied in Kress Tankers come from an arbitrator's decision, it comes from a district court in another part of the country and those opportunities for different perspectives or elements in the proceedings I think are different than what you have in this case, which is the same judge in the same district has looked at the same evidence. And I think that is a significantly different circumstance. Moreover, the corporate structure that was in play for this potential, the privity element was much more complicated. You had holding companies or parent companies and subsidiaries, you had a really diverse array of entities. Here we had an original company that ceased to operate, Mankato Plumbing and Heating, owned exclusively by Sean and Sarah Winner. They then generated two new entities, Winner Quality Services and S&S Thermodynamics, both owned by Sean and Sarah Winner, identically, and they attempted to take a piece of work that was being done and had been collectively bargained and covered by contribution obligations at Mankato Plumbing and Heating and move that to Winner Quality Services and not have it be subject anymore to a collective bargaining agreement. And Judge Magnuson in the S&S opinion specifically noted that you can't just spin to a different contract. That's not... I'm not sure how this addresses Crest-Hankers. I understand how it addresses the merits of the alter-ego argument, but I appreciate the thoughts. No, Your Honor, and I understand... Let me ask it this way. Is there a basis here to say that there was privity between the parties in the first case and WQS without deciding that they're alter-egos? I think that the privity question is answered by the fact that, as the Minnesota District has certainly applied in the past, that you have identical ownership of the entities can, in and of itself, establish privity. All right. And so you could establish privity in that way without having to decide that the parties are alter-egos because it doesn't involve a fraud element, for example. Yes. And the fraud piece is, here, that's a characterization being offered by the appellant, but the real conduct issue was an improper attempt to avoid their contribution obligation, the obligations of a collective bargaining agreement. Okay. How do you characterize it? It may not be an element of privity. Correct. What about this issue of damages, if I may? Are these three components all proper ERISA-type damages? The three components of contributions, liquidated damages, and entreaties? No, no. I meant the three different fund. As I recall, there are three different funds. Well, there's probably more than three, Your Honor. But all of the benefit contributions are specified in the collective bargaining agreement. And the only thing that is arguably outside of ERISA is the working fee contribution that is collected for the local on behalf of the employees, and there's an association, which is fairly small. We're talking cents, but there's an association fee. However... The working fee is one that I had in mind, and there's the industry fund and the credit union. Well, the credit union is the label. It was originally the vacation fund contribution, and the process that has been applied is that those dollars are paid to the service association. The service association, in turn, then distributes to a credit union for purposes of having those dollars be available when people take time off. That's the longstanding and avowed purpose. The United States Department of Labor has taken the position in other proceedings that that is ERISA related. What about the working fee? Working fee is not, because that's a contribution for the union dues. However, it is specified as requiring those contributions to be paid to the plaintiff service association. You mean in the CBA it says that? Right. Oh, absolutely. But this is an ERISA lawsuit, as I understand it. Well... Isn't the court limited to awarding damages that are allowed under ERISA? Not exclusively, no. I think if the facts support that the claim and the complaint very plainly sets out that all of these items are payments that are due pursuant to the collective bargaining agreement, the primary amount is the amount for the ERISA regulated contributions. But the working fee and the industry fund would not be ERISA related, but they are part of the contractual obligation that is directed under the collective bargaining agreement to the service association to collect. If that had been challenged, I think... My concern is that the statute, you know, says in any action you can get damages, you can get unpaid contributions, and then if you go further into the statute, it explains what contributions are required, which are the welfare benefit plan, the pension benefit plan. And if you're saying, well, we've got some benefits here that are, or some contributions rather that are required by the CBA but aren't encompassed by the ERISA statute, I'm just wondering whether you need an action separate from an ERISA action to get those, you see. And I think, Your Honor, that's, and I confess because I'm only in my about 30 years that this is the first time this has come up as an issue, but the pleadings support that that was part of what was being sought, and if below, for example, that challenge was being made, a viable response to that is that the pleadings can be conformed to match what actually is in dispute and the parties are attempting to. How would they have been conformed here if, you're saying this issue wasn't raised properly in the district court, is that what you're saying? I don't believe so, no. Well, Judge Magnuson said it wasn't timely raised, as I recall. He said it should have been raised on summary judgment rather than at the damages hearing, but in any event, how would you have conformed the pleading? Well, it would be in the form of an amended complaint to reflect that under the provisions of the collective bargaining agreement, there's a contractual basis to enforce the collection of those contributions. You mean a state law? What kind of, is that a, what do you mean, a state law contract claim or some kind of federal labor law claim? I think it would be under the National Labor Relations Act as a provision of the contract. It also could have been a pendant state claim as well. Well, I don't know. Okay. Thank you. I've gone over the time, Chief. Thank you for your latitude. All right. Thank you, Your Honor. Mr. Tobin, you used all your time, but we'll give you a minute if you've got something you want to respond to quickly. I do thank you, Your Honor. The damages issue was raised below, and the complaint only brings a claim based on ERISA, and that's why we ended up making that argument, and if that was untimely because it was raised at the damage phase, since that was a damage claim, then Judge Magnuson is correct, but I think it was a waived claim because I didn't bring it up on summary judgment, a denial of which this court apparently may not hear because you won't consider a denial of summary judgment. There has to be some way under the fundamental fairness standard in Parklane-Hosiery, which is a U.S. Supreme Court case, that a litigant such as WQS, a separate entity, has got to be able to argue the merits of this issue when it has never had the opportunity to do so before this court. All I meant when I said we wouldn't normally consider an appeal of a denial of summary judgment is it would typically go back to the district court for an entry of some kind of judgment, and then you'd be entitled to appeal. That's all I meant. Not that it could never be raised. And I think this court then considers that issue de novo and has the opportunity to determine whether my client was entitled to summary judgment and that was an improper denial. If you're going to consider it at all, you have that ability. If you're not going to consider it, then I think there has to be some review of the original summary judgment decision that started this process, which again was a denial that didn't end up in a judgment. To suggest that by this circuity of events, this unusual series of events, I can't now argue the merits of the summary judgment decision on behalf of my client, WQS, seems to me to violate every standard of due process and fundamental fairness that Parklane-Hosiery recognized when it was discussing the proper use of offensive collateral estoppel. Thank you. Thank you, Mr. Tobin. The court wishes to thank both counsel for your presence and the argument you provided the court. We'll take your case under advisement and render a decision in due course. Thank you.